

United States Department of Justice

*United States Attorney*
*Southern District of West Virginia*

*Robert C. Byrd United States Courthouse*
*300 Virginia Street, East*
*Suite 4000*
*Charleston, WV 25301*
*1-800-659-8726*

*Mailing Address*
*Post Office Box 1713*
*Charleston, WV 25326*
*304-345-2200*
*FAX: 304-347-5104*

November 20, 2019

George J. Cosenza, Esq.
George J. Cosenza, PLLC
1130 Market St.
Parkersburg, WV 26101



FILED
DEC 19 2019
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

Re: United States v. Meds2Go Express Pharmacy, Inc.

Dear Mr. Cosenza:

This will confirm our conversations with regard to your client, Meds2Go Express Pharmacy, Inc. (hereafter "Meds2Go"). As a result of these conversations, it is agreed by and between the United States and Meds2Go as follows:

1. **CHARGING AGREEMENT.** Meds2Go agrees to waive any right it may have to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

2. **RESOLUTION OF CHARGES.** Meds2Go will plead guilty to the single-count information, which charges it with a violation of 18 U.S.C. § 1956(a)(1)(A)(i) (Money Laundering).

3. **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Meds2Go will be exposed by virtue of this guilty plea is as follows:

   (i) A fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever

MEDS2GO By PM
_____
Defendant's
Initials

George J. Cosenza, Esq.  
November 20, 2019         Re: Meds2Go Express Pharmacy, Inc.  
Page 2

                is greater. Alternatively, and pursuant to 18 U.S.C. § 3571, a fine of $900,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (ii)    A mandatory special assessment of $400 pursuant to 18 U.S.C. § 3013; and

    (iii)    An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664.

    4.    **BUSINESS DISSOLUTION.** Within 14 days of entry of a plea of guilty to the single-count information in this case or by January 1, 2020, whichever is later, the shareholder(s) of Meds2Go agrees to:

    (a)    Approve and direct the full payment of community restitution under paragraph 6 of this agreement;

    (b)    Approve and direct the full payment of forfeiture under paragraph 7 of this agreement;

    (c)    Direct the termination of all day-to-day corporate operations;

    (d)    Draft and approve a resolution dissolving the corporation and then vote on the approved resolution; and

    (e)    File the dissolution paperwork with the West Virginia Secretary of State.

The shareholder(s) of Meds2Go further agrees to:

    (f)    Formalize the closing of the corporation with state and federal tax agencies and pay all tax obligations;

    (g)    Notify all creditors of the closing of the corporation and settle all outstanding claims; and

MEDS2GO by PM  
                                                Defendant's Initials

George J. Cosenza, Esq.  
November 20, 2019          Re: Meds2Go Express Pharmacy, Inc.  
Page 3

    (h)   Never re-open or re-register the corporation(s).

    5.   **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Meds2Go will tender a check or money order to the Clerk of the United States District Court for $400, which check or money order shall indicate on its face the name of the defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Meds2Go will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Meds2Go fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Meds2Go.

    6.   **RESTITUTION.** Meds2Go agrees to pay $125,000 (the Stipulated Financial Payment) as community restitution. The Stipulated Financial Payment is separate and apart from any settlement Meds2Go may reach in any separate civil settlement agreement with the Department of Justice or any United States Attorney's Office. Meds2Go further agrees that the Stipulated Financial Payment shall be treated, for all purposes, including tax purposes, as a penalty paid to the United States government and that it will not claim, assert, or apply for a tax deduction, tax credit, or any other tax-related benefit with regard to any federal, state, local, or foreign tax for any financial payment paid pursuant to this Agreement. Meds2Go and the United States agree that the Stipulated Financial Payment will be used to pay for the costs associated with drug abuse treatment in West Virginia to redress the harm caused by illicit opioid usage stemming from the sale of prescription opioids, from July 2014 through March 2015. Meds2Go shall pay the $125,000 within fourteen (14) days of the entry of a guilty plea in this matter and prior to dissolution of the corporation, by electronic funds transfer pursuant to instructions to be provided by the United States. In accordance with 18 U.S.C. § 3663(c)(3), the payment shall be structured as follows:

                                                                             MEDS2GO By PM  
                                                                                  Defendant's Initials

George J. Cosenza, Esq.
November 20, 2019          Re: Meds2Go Express Pharmacy, Inc.
Page 4

(a) $81,250 (65%) shall be paid to the West Virginia Crime Victim's Compensation Fund; and

(b) $43,750 (35%) shall be paid to West Virginia Department of Health and Human Resources, Bureau of Behavioral Health and Health Facilities.

7. **FORFEITURE.** Meds2Go hereby agree as follows:

(a) To forfeit to the United States any and all property in Meds2Go's possession or under its control which constitutes proceeds of or is derived from the proceeds of the offense to which Meds2Go is agreeing to plead guilty, and is set forth in this information, namely a violation of 18 U.S.C. § 1956(a)(1)(A)(i). Meds2Go further agree not to contest a forfeiture money judgment in the amount of $125,000, such amount which constitutes proceeds of the violation set forth in the attached information.

(b) To assist the United States and its agents in identifying all such property, regardless of its location and the manner in which it is titled. Any such identified property deemed forfeitable by the United States will then be forfeited, pursuant to 18 U.S.C. §§ 981, 982 or 28 U.S.C. § 2461, in either an administrative or judicial forfeiture action;

(c) To fully complete and execute, under oath, a Financial Affidavit in a form supplied by the United States and to return to counsel for the United States the completed Affidavit within seven calendar days from the date of signing this plea agreement;

(d) To provide sworn testimony and to execute any documents deemed necessary by the United States to effectuate the forfeiture and to transfer title to the said property to the United States; and

*MEDS2GO By PM*
Defendant's Initials

George J. Cosenza, Esq.
November 20, 2019           Re: Meds2Go Express Pharmacy,
Inc.
Page 5

    (e)  To waive any defenses to this criminal action, or to any related administrative or judicial forfeiture action, based in whole or in part on the Excessive Fines Clause of the Eighth Amendment to the Constitution, or the holding or principles set forth in <u>United States v. Alexander</u>, 509 U.S. 544 (1993); <u>United States v. Bajakajian</u>, 524 U.S. 321 (1998); <u>United States v. Austin</u>, 509 U.S. 602 (1993); and their progeny.

    8. **PAYMENT OF MONETARY PENALTIES.** Meds2Go agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Meds2Go further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

    9. **COOPERATION.** Meds2Go will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will fully and truthfully cooperate with the United States in its ongoing criminal investigation(s) of individuals, including but not limited to investigation of any individual who is or may have been employed by or affiliated with Meds2Go. Meds2Go will produce records, provide factual information, and will, upon request of the United States, use its best efforts to secure the cooperation of its current (as of the date of execution of its' agreement by Meds2Go) directors, officers, and employees for interviews and testimony before a grand jury, trial or other federal judicial proceeding. In complying with this provision, Meds2Go may have counsel present except before a grand jury.

    10. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Meds2Go, and except as expressly provided for in paragraph 12 below, nothing contained in

*MEDS2GO By PM*
Defendant's
Initials

George J. Cosenza, Esq.
November 20, 2019          Re: Meds2Go Express Pharmacy, Inc.
Page 6

any statement or testimony provided by Meds2Go pursuant to this agreement, or any evidence developed therefrom, will be used against Meds2Go, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

11. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Meds2Go for any violations of federal or state laws. The United States reserves the right to prosecute Meds2Go for perjury or false statement if such a situation should occur pursuant to this agreement.

12. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Meds2Go stipulate and agree that the facts comprising the offense of conviction include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Meds2Go agrees that if it withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by Meds2Go, and Meds2Go is subsequently tried on any of the charges in the information, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Meds2Go or of any its witnesses, or in rebuttal of any testimony introduced by Meds2Go or on its behalf. Meds2Go knowingly and voluntarily waives, see <u>United States v. Mezzanatto</u>, 513 U.S. 196 (1995), any right it has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Meds2Go understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the

*MEDS 2GO By PM*
Defendant's Initials

George J. Cosenza, Esq.
November 20, 2019            Re: Meds2Go Express Pharmacy, Inc.
Page 7

Court, the parties will not have the right to withdraw from the plea agreement.

13. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Meds2Go knowingly and voluntarily waives its right to seek appellate review of its' conviction and of any sentence of fine or term of probation imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. The United States also agrees to waive its right to appeal any sentence of fine or term of probation imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

Meds2Go also knowingly and voluntarily waives the right to challenge its guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

14. **WAIVER OF FOIA AND PRIVACY RIGHT.** Meds2Go knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

15. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United

*MEDS2Go By PM*
Defendant's
Initials

George J. Cosenza, Esq.
November 20, 2019          Re: Meds2Go Express Pharmacy, Inc.
Page 8

States reserves the right to:

    (a)    Inform the Probation Office and the Court of all relevant facts and conduct;

    (b)    Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

    (c)    Respond to questions raised by the Court;

    (d)    Correct inaccuracies or inadequacies in the presentence report;

    (e)    Respond to statements made to the Court by or on behalf of Meds2Go;

    (f)    Advise the Court concerning the nature and extent of Meds2Go's cooperation; and

    (g)    Address the Court regarding the issue of Meds2Go's acceptance of responsibility.

    16.  **VOIDING OF AGREEMENT.**  If either the United States or Meds2Go violate the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

    17.  **ENTIRETY OF AGREEMENT.**  This written agreement constitutes the entire agreement between the United States and Meds2Go in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Meds2Go in any Court other than the United States District Court for the Southern District of West Virginia.

*MEDS2GO By PM*
_____
Defendant's
Initials

George J. Cosenza, Esq.
November 20, 2019          Re: Meds2Go Express Pharmacy, Inc.
Page 9

Acknowledged and agreed to on behalf of the United States:

                MICHAEL B. STUART
                United States Attorney

By: _____
    Andrew J. Tessman
    Assistant United States Attorney

As a corporate officer of Meds2Go, authorized to act for and on behalf of Meds2Go in executing and entering into this agreement, I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this nine-page agreement that I have read and carefully discussed every part of it with Meds2Go's attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement on behalf of Meds2Go. I further acknowledge that Meds2Go's attorney has advised Meds2Go of Meds2Go's rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to Meds2Go other than those in this agreement, and that no one has threatened Meds2Go or forced Meds2Go in any way to enter into this agreement. Finally, Meds2Go and I are satisfied with the representation of Meds2Go's attorney in this matter.

_____     12/2/19
Meds2Go Express Pharmacy, Inc.    Date Signed
Defendant
By PHILIP MICHAEL, President

_____     12/2/19
George J. Cosenza, Esq.           Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

v.  CRIMINAL NO. _____
          18 U.S.C. § 1956(a)(1)(A)(i)

**MEDS2GO EXPRESS PHARMACY, INC.,**

I N F O R M A T I O N
(Money Laundering)

The United States Attorney charges:

Beginning in or about July 2014, and continuing until at least March 2015, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia, defendant MEDS2GO EXPRESS PHARMACY, INC., did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, to wit: purchasing powders and other raw materials for purposes of manufacturing controlled substances, which involved the proceeds of a specified unlawful activity, that is: dispensing and manufacturing controlled substances in violation of 21 U.S.C. § 841 and furthering a conspiracy to dispense and manufacture controlled substances in violation of 21 U.S.C. § 846, with the intent to

1

**"PLEA AGREEMENT EXHIBIT A"**

promote the carrying on of the same specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, the defendant knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

2

**"PLEA AGREEMENT EXHIBIT A"**

**NOTICE OF FORFEITURE**

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), including violations of 18 U.S.C. § 1956, which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violation set forth in this indictment; and

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all

3

**"PLEA AGREEMENT EXHIBIT A"**

other property of the defendant/s to the extent of the value of the property described in (a).

The following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $125,000, such amount constituting the proceeds of the violation set forth in this information.

          UNITED STATES OF AMERICA

          MICHAEL B. STUART
          United States Attorney

By: _____
     ANDREW J. TESSMAN
     Assistant United States Attorney

**"PLEA AGREEMENT EXHIBIT A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.     CRIMINAL NO. _____

MEDS2GO EXPRESS PHARMACY, INC.

### STIPULATION OF FACTS

The United States and Meds2Go Express Pharmacy, Inc., stipulate and agree that the facts comprising the offense in the single-count Information to be filed in the Southern District of West Virginia, include the following:

1. At all relevant times, defendant Meds2Go Express Pharmacy, Inc., and Alum Creek Pharmacy, Inc. (a now defunct uncharged coconspirator, collectively "the Pharmacies") were West Virginia corporations located in Alum Creek, Lincoln County, West Virginia, and Charleston, Kanawha County, West Virginia, and were engaged in the pharmaceutical dispensing business. Philip Michael was the president of the Pharmacies. The Pharmacies employed pharmacists, pharmacy technicians, and other individuals authorized to act on behalf of the corporation.

2. Between in or around November 2010 and June 2015, Hitech Opioid Pharmachovigilance Expertise Clinic, PLLC, ("Hope Clinic") was a purported pain management clinic with locations in the Southern District of West Virginia and elsewhere. In reality, the company operated as a "pill mill" in that practitioners prescribed large amounts of controlled substances to "patients" not for a legitimate medical purpose and outside the usual course of medical practice.

3. The Pharmacies knew that there was no legitimate medical purpose for the prescriptions written by Hope Clinic and that they were prescribed outside the usual course of medical practice. The

<u>MEDS2GO By PM</u>
Defendant's Initials

**PLEA AGREEMENT EXHIBIT B**

pharmacies filled the prescriptions written by Hope Clinic to maximize corporate profits.

4. The Pharmacies ignored numerous red flags that should have prevented them from dispensing the prescription medications written by Hope Clinic doctors. For instance, the Pharmacies observed the following regarding prescriptions written by Hope Clinic doctors and Hope Clinic's patients: (1) an abnormally high amount of prescriptions for widely-abused, highly-addictive controlled substances such as oxycodone; (2) prescribed controlled substances to patients for long periods of time; (3) permitted refills before prior prescriptions should have run out; (4) ignored obvious signs that patients were drug addicts; (5) patients travelled long distances and from out of state; (6) multiple Hope Clinic physicians issued prescriptions to the same patient; (7) numerous family members, who were all Hope Clinic patients, came to the pharmacy at the same time; (8) insurance companies refused to pay for prescriptions from Hope Clinic; and (9) cash-only transactions.

5. "Compounding" involves the combining, mixing, or altering of ingredients to create a drug or medication tailored to the needs of the individual patient. Generally, pharmacies may obtain a license to fill and dispense legitimate prescriptions for a compounded medication. The Pharmacies obtained a license to fill and dispense compounded prescriptions.

6. A prescription for a compounded medication must be written for an individual patient's specific medical need. For example, a physician may write a prescription for a compounded medication if a patient requires removal of a substance from the commercially-manufactured formulation of a pill to address a patient's known allergy. Pharmacies, however, may not compound on a mass scale as a substitute for purchasing commercially-available pills from a distributor. Pharmacies that engage in mass compounding as a substitute for purchasing commercially-available pills from a distributor are essentially engaged in manufacturing their own supply of narcotics. For safety and other regulatory reasons, pharmacies, such as the Pharmacies, are not permitted to manufacture narcotics without a proper manufacturing license and permits from state and federal authorities. The Pharmacies did not

MEDSLGO BY PM
Defendants' Initials

**PLEA AGREEMENT EXHIBIT B**

2

have the required licensure and permits to engage in manufacturing of controlled substances.

7. From in or about July 2014 to in or about March 2015, the Pharmacies conspired with Hope Clinic to distribute and dispense prescriptions for compounded controlled substances such as oxycodone and methadone. Hope Clinic wrote prescriptions for compounded controlled substances for non-commercially available strengths of controlled substances to attempt to provide justification for the Pharmacies to engage in the practice of compounding. Due to the excessive amount of prescriptions for controlled substances written by Hope Clinic, the Pharmacies could no longer obtain the necessary amount of commercially available strengths of controlled substances from their distributors. In order to bypass the allotment restrictions placed on the Pharmacies by their distributors, the Pharmacies purchased compounding equipment, trained its employees to compound pills on a mass scale, purchased the necessary powders and other raw materials, and manufactured pills containing controlled substances. The Pharmacies then filled the prescriptions written for compounded controlled substances by Hope Clinic for non-commercially available strengths of oxycodone and methadone. The Pharmacies' customers purchased the compounded controlled substances and paid fees in cash-only transactions. Customers paid cash because insurance providers would not cover: (1) prescriptions written by Hope Clinic; and (2) prescriptions for compounded controlled substances.

8. The Pharmacies knew that there was no legitimate medical purpose for the prescriptions for compounded controlled substances written by Hope Clinic and that they were prescribed outside the usual course of medical practice. The Pharmacies filled the prescriptions for compounded controlled substances written by Hope Clinic to maximize corporate profits.

9. From about July 2, 2014, until about March 31, 2015, the Pharmacies filled 975 prescriptions for compounded controlled substances for Hope Clinic patients. The Pharmacies charged its customers a total of $224,285.82 for those prescriptions and used the proceeds to carry on the operations of business, including filling prescriptions for Hope Clinic patients.

*MEDSCO By PM*<br>Defendants'<br>Initials

**PLEA AGREEMENT EXHIBIT B**

3

10. The Pharmacies admit that the prescriptions for compounded controlled substances were dispensed in violation of 21 U.S.C. § 841. The Pharmacies admit that its agreement with Hope Clinic to dispense prescriptions for compounded controlled substances violates 21 U.S.C. § 846.

11. The Pharmacies admit that they knew the proceeds from its dispensing of prescriptions for compounded controlled substances written by Hope Clinic constitutes "specified unlawful activity" under 18 U.S.C. § 1956(c)(7).

12. Meds2Go Express Pharmacy agrees with the United States that Charleston, Kanawha County, West Virginia, is within the Southern District of West Virginia.

This Stipulation of Facts does not contain each and every fact known to Meds2Go Express Pharmacy and to the United States concerning its involvement and the involvement of others in the charges set forth in the Information, and is set forth for the limited purpose of establishing a factual basis for the defendant's guilty plea.

Stipulated and agreed to:

_____ FOR MEDS2GO        12/2/19
Meds2Go Express Pharmacy, Inc.               Date Signed
Defendant
By PHILIP MICHAEL
President

_____                    12/2/19
George J. Cosenza, Esq.                      Date Signed
Counsel for the Defendant

_____                    12/5/19
Andrew J. Tessman                            Date Signed
Assistant United States Attorney


                                             _____
                                             Defendants'
                                             Initials

**PLEA AGREEMENT EXHIBIT B**

4